## NEFF VS. RAINS.

REFORMATION OF CONTRACT. (1) *Ground of reformation.* (2) *Evidence.*

1. A written instrument (in this case an assignment of a judgment with guaranty of payment) will not be reformed merely for a mistake of the person executing it as to its *legal effect*, he being acquainted at the time with its contents.
2. The evidence in this case *held* not to establish any *mistake of fact* in the execution of the contract in question with sufficient clearness to warrant a court of equity in reforming it.

APPEAL from the Circuit Court for *Winnebago* County.

In part payment for a stock of goods sold by *Rains* to *Neff*, the latter assigned to the former a judgment in his favor against one Ripley for $268.88, with a guaranty of "the *payment* of said judgment" and interest thereon to the date of such assignment, making an aggregate of $423.11. This action was brought to reform said assignment, by substituting for the guaranty therein expressed, one to the effect that in case the assignee should fail to collect the judgment after exhausting all legal remedies therefor at his own expense, then *Neff* would pay the amount of such judgment with interest to the date of the assignment. The general character of the evidence adduced at the trial will sufficiently appear from the opinion. The plaintiff had a judgment as demanded, in the circuit court; and the defendant appealed.

*H. B. Jackson*, for appellant, after discussing the evidence, relied upon the following principles of law : 1. Agreements entered into under a mistake of the law are valid alike in law and equity. Story's Eq. Jur., §§ 110–114; Broom's Leg. Max., 190; Adams' Eq. (2d Am. ed.), 342, 343; Willard's Eq., 59,

VOL. XXXIII.—44

60, 69; 12 Peters, 32; 1 id., 1; 9 Barb., 532, and cases there cited; 1 Johns. Ch., 512; 2 id., 51; 12 Johns.,.501.　2. When parties make just such an instrument as they intend to make, without fraud, surprise, undue influence or mistake of their rights, but act under an error as to the mere legal effect of the instrument, that alone will not authorize a correction by a court of equity. *Arthur v. Arthur*, 10 Barb., 9, and cases there cited; 2 Md., 25; 6 H. & J., 24, 128; 9 Conn., 96; 8 Wheat., 404; 1 Peters, 1; Willard's Eq., 69.　3. Before a court of equity can change a written agreement, it must be *clearly shown* that the parties were *mutually mistaken* as to a material fact. Story's Eq. Jur., 141, 146, 147, 157; Adams' Eq., 343, 344; Willard's Eq., 69; 2 Johns. Ch., 595; 4 Barb., 95, 108.　4. And the fact must be of that high importance which would render the contract such as it would be unconscionable to enforce. Story's Eq. Jur., 161; 12 Wis., 81; 4 Barb., 103.　5. When no words have been left out by fraud or mistake, the writing is the best evidence of what the parties intended. Willard's Eq., 75; 11 Paige, 658.

*Whittemore & Weisbrod*, for respondent, contended that the evidence was such as to justify the conclusions of the circuit court; and that this court would not reverse the judgment upon a mere difference of opinion as to the weight of evidence. *Evans v. Bennett*, 7 Wis., 404; *Walls v. Page*, 16 id., 66.

DOWNER, J. The question presented in this case is, whether there was a mistake in inserting a guaranty of payment, instead of a guaranty of collection at the costs of the assignee, in an assignment of a judgment against one Ripley, transferred by the plaintiff to the defendant below as part payment for a stock of goods.

The plaintiff testified, in substance, that he was only to guaranty the collection; the defendant, that the agreement was that the plaintiff would assign the judgment and guaranty the payment. Wickwire testified: "I was called up to hear the

bargain stated as agreed upon by them. Defendant stated, I think (it might have been *Neff*), that he sold *Neff* the hardware stock, and was to take a judgment against Ripley in part payment, and the balance in money; and *Neff* would guaranty the payment of the judgment. *Neff* assented. Can't tell the words he used; said that was the understanding." This is the substance of the testimony as to what took place at the time the bargain was made; and it is clear, if the testimony stopped here, the weight of the evidence would be against the plaintiff. There is, however, conflicting testimony as to the admissions and statements of the parties or their respective agents made subsequent to the agreement, after the delivery of the goods, and before or at the time of executing the assignment, as to what the agreement was; and the weight of this testimony is against the defendant. But these admissions, made after the goods were delivered, when it was for the interest of the parties each to qualify or modify the agreement in his favor (the proof of the admissions depending upon the imperfect recollection of conversations which witnesses were not specially called upon to recollect), cannot, as it appears to us, outweigh the testimony of Wickwire, who was called upon to hear the bargain stated, and to whom it was stated for the very purpose of his recollecting it in case there was any disagreement as to its terms. And the fact that *Neff*, after the assignment as drawn had been corrected at his request, and was read over to him, signed it, at the same time being informed, as appears both by the testimony of Wickwire and Rich, that he could not oblige *Rains* under the assignment to prosecute Ripley at all, strongly tends to corroborate the testimony of Wickwire as to the terms of the agreement.

We are inclined to the opinion that there was no mistake in the contract of assignment; or if there was any, it was a mistake of law — a mistake on the part of *Neff* as to the legal effect of the assignment; for it is clear that he knew the contents of the assignment at the time he executed it. If there was a mis-

take of law on his part, he cannot have the instrument reformed on that account. The evidence, in our judgment, falls far below establishing so clearly a mistake of fact as to warrant a court of equity to interfere and reform the contract.

*By the Court.*— The judgment of the circuit court is reversed, with costs, and the cause remanded with direction to dismiss the complaint.